UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **CIPRIANO GARCIA on Behalf of** | § | |
| **Himself and on Behalf of All Others** | § | |
| **Similarly Situated,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 1:22-cv-6** |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **AHTNA SUPPORT AND TRAINING** | § | |
| **SERVICES, LLC, AHTNA TECHNICAL** | § | |
| **SERVICES, INC., and AHTNA, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S COLLECTIVE ACTION AND
CLASS ACTION COMPLAINT AND JURY DEMAND**

1.     This lawsuit is brought by Plaintiff Cipriano Garcia, on behalf of himself and all others similarly situated, ("Plaintiff") against Defendants Ahtna Support and Training Services, LLC, Ahtna Technical Services, Inc., and Ahtna, Inc. ("Defendant"). The Plaintiff and proposed Class Members are current and former employees of Defendants.  The Plaintiff and Class Members worked across the country and were systemically denied the pay that they were entitled under the Fair Labor Standards Act.  This case challenges Defendants' long-standing policy of failing to properly compensate its non-exempt detention officers for all hours that they work. Specifically, Defendants failed to pay the Plaintiff and the Class Members (1) for the time spent completing security screenings, (2) for all pre-shift work that they performed, and (3) for the time that Defendants automatically deduced each shift from the Plaintiff and Class Members.  As a result of Defendants' pay policies, the Plaintiff and Class Members have not been paid for all hours that they worked.

1

2.      Indeed, as a result of Defendants' illegal pay policies, Plaintiff and the Class Members worked in excess of 40 hours per week but they were not paid their overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.  Plaintiff now brings this claim as a collective action pursuant section 216(b) of the FLSA.

3.      Plaintiff also brings this lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure for Defendants' failure to pay Plaintiff and the Class Members for all hours that they worked in those weeks when the Plaintiff and Class Members worked less than 40 hours.

## SUBJECT MATTER JURISDICTION AND VENUE

4.      This court has federal question jurisdiction over the subject matter of this action per 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the Fair Labor Standards Act, 29 U.S.C. § 207.  This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this claim occurred in this District, including many of the wrongs herein alleged. Plaintiff worked in this District, was denied wages in this District, and Defendants operate a detention facility in this District.

## PARTIES AND PERSONAL JURISDICTION

6.      Plaintiff Cipriano Garcia is an individual residing in Brownsville, Texas.  Plaintiff has worked for Defendants as a detention officer at the Port Isabel Detention Center since 2008. His written consent this action is attached hereto as Exhibit "A."

7.      Defendant Ahtna Support and Training Services, LLC is a foreign limited liability company organized under the laws of Alaska.  Said Defendant may be served process through its

registered agent the Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

8.      Defendant Ahtna Technical Services, Inc. is a foreign corporation organized under the laws of Alaska.  Said Defendant may be served process through its registered agent the Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

9.      Defendant Ahtna, Inc. is a foreign corporation organized under the laws of Alaska. Said Defendant may be served process through its registered agent the Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

10.     The FLSA Class Members are all current and former detention officers who worked for Defendants at any time during the three year period prior to the filing of this Complaint to the present.

11.     The Texas Class Members are all current and former detention officers who worked for Defendants at any time in Texas during the four year period prior to the filing of this Complaint to the present.

12.     The FLSA Class Members and the Texas Class Members shall be collectively referred to as the "Class Members."

13.     This Court has personal jurisdiction over Defendants because they have purposefully availed themselves of the privileges of conducting activities in the state of Texas and established minimum contacts sufficient to confer jurisdiction.  Defendants do business in Texas, advertise in Texas, employ workers in Texas, and the violations of the law forming the basis of this lawsuit occurred in Texas.  Therefore, the assumption of jurisdiction over Defendants will not

offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.  Defendants also have had and continue to have continuous and systematic contacts with the State of Texas sufficient to establish general jurisdiction over it.

## COVERAGE

14.     At all material times, Defendants have been an employer within the meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d).

15.     Defendants are an enterprise engaged in commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203(s)(1)(c).

16.     At all material times, Plaintiff and the Class Members were/are employees engaged in commerce or the production of goods for commerce as required by 29 U.S.C. § 207.

17.     At all material times, Plaintiff and the Class Members were not exempt from overtime under the FLSA.

18.     At all material times, Defendants have operated as a "single enterprise" within the meaning of 29 U.S.C. § 203(r)(1).  That is Defendants perform related activities through unified operation and common control for a common business purpose.

19.     Defendants employ detention officers at federal detention facilities across the country under the control of the same senior level management of Defendants.  Indeed, Defendants advertise themselves as a unified entity through the same website.

20.     Defendants represent themselves to the public as one company operating at multiple locations.  They share employees, have a common management, pool their resources, operate from the same headquarters, have common ownership, and have the same operating name.

21.     Defendants operate under a unified business model and part of that unified business model is the wage violations alleged in this Complaint.

4

22.     Thus, Defendants formed a "single enterprise" and are liable for the violations of the other.

### FACTS

23.     Defendants provides detention services across the U.S. for the federal government. As Defendants' website states:

> Ahtna provides a variety of security services for various government divisions and commercial entities.  These services include (but are not limited to): both armed and unarmed guard services, **detention services**, security screening services, transportation services, and full food services.
>
> **Ahtna has extensive detention center and security guard experience from four large ICE immigration detention center facilities** demonstrating our knowledge and capabilities with all applicable contractual standards and regulations.

(http://ahtnasts.com/resources, last visited Jan. 17, 2022).

24.     In particular, Defendants operate ICE immigration detention centers across the U.S. For example, Defendants provide detention services in Arizona, Florida, New York, and Texas.

25.     To provide these services, Defendants employ detention officers.  The job duties of detention officers include overseeing the detainees, ensuring the safety and security of the detention centers, and monitoring the activities in the detention centers.

26.      Plaintiff worked as an hourly, non-exempt detention officer for Defendants at the Port Isabel Detention Center in Texas.  Plaintiff has worked for Defendants since 2008.  He is paid an hourly rate of approximately $22 per hour.  His schedule is normally Saturday through Wednesday, 7 a.m. to 3 p.m.

27.     The detention facilities, including the location where Plaintiff worked, are staffed by detention officers 24 hours per day and 365 days per week.  The detention officers are employed to ensure the safety and security of the detention facilities.  The detention officers are required to maintain constant vigilance and monitor the actions of others as soon as they arrive at the facility.

If anything transpires that could affect the safety and security of the facilities, the detention officers have a duty to act and address those issues no matter the location and time of day that it occurs, including before their paid shifts begin and after they end.

28.     The posts at the detention facilities are staffed 24 hours per day.  Defendants assign detention officers to posts that are scheduled for 8 hour shifts.  To operate 24 hours per day, there are three 8 hour shifts.  There is the 7 a.m. to 3 p.m. shift, the 3 p.m. to 11 p.m. shift, and the 11 p.m. to 7 a.m. shift.  The detention officers, including the Plaintiff and Class Members, were required to be at their assigned posts, in unform, with all assigned equipment, and ready to work 15 minutes prior to the start of their shift.  If they failed to do so and were late, they were subject to being disciplined.

## THE PLAINTIFF AND CLASS MEMBERS PERFORMED SIGNIFICANT PRE-SHIFT WORK THAT WENT UNCOMPENSATED

29.     Defendants have failed to pay for all compensable time worked by the Plaintiff and Class Members.  Indeed, Defendants have failed to pay for all time that Defendants have suffered or permitted them to work in pre-shift activities which were required to be performed on the premises of Defendants.  This pre-shift work that was integral and indispensable to their daily duties for Defendants.

30.     The primary job duty of the Plaintiff and the Class Members was to manage and oversee the detainee population at the detention centers, to ensure safety at the detentions, and to maintain security at the detentions. The Plaintiff and Class Members were responsible for the custody and discipline of detainees held at the detention centers operated by Defendants. Among other duties, the Plaintiff and Class Members searched for contraband and provided security, count, feed, and supervised detainees.

31.     Given the nature of the detention centers, the centers are secured by locked doors and metal detectors.  The Plaintiff and Class Members began their workday when they began a security screening in the lobby of the detention centers. Indeed, when the Plaintiff and Class Members arrived at the detention centers, they were first required to undergo a security screening to ensure that they did not inadvertently bring contraband or anything harmful into the facility.

32.     During the security screening, the Plaintiff and Class Members emptied their pockets, emptied their bags, removed their shoes, removed their belts, removed their jackets, removed all metal objects, and submitted any personal items in their possession for inspection.

33.     They then walked through a metal detector and underwent a further search if any metal objects were detected.  After clearing the metal detector, the Plaintiff and Class Members were able to gather their belongings.

34.     The Plaintiff and Class Members then put on their clothing, including their shoes, belts, and jackets.

35.      This security screening time lasted approximately 10-20 minutes per day and went uncompensated by Defendants.  After completing the security screening, the Plaintiff and Class Members were required to walk to a central station where a logbook is located.  They then wrote their names and the times they cleared the security screening.

36.     The time it takes to complete the security screening is readily identifiable and calculable.  First, Defendants have digital records showing the time when each person enters the detention centers and begins the security screening.  Second, Defendants have surveillance records identifying this time.  Third, Defendants have possession of the log book showing the time that each person cleared the security screening.  Thus, Defendants are in possession of records that can

show the uncompensated time spent undergoing security screening at the facilities across the country.

37.    The security screenings were required by Defendants and the Plaintiff and Class Members were told in advance the time they were required to be at the detention centers.

38.    The security screenings were also necessary to the principal work performed by the Plaintiff and Class Members – to provide security in the detention centers and to search for contraband.  The security screenings were undertaken on Defendants' premises, controlled and required by Defendants, and undertaken primarily for the benefit of Defendants.

39.    Indeed, Defendants required the Plaintiff and Class Members to undergo this screening for the purposes of overall safety in the detention centers and to prevent the officers from inadvertently or intentionally bringing contraband into the detention centers.

40.    These security screenings prevented weapons and other contraband from entering the detention centers, and in doing so, was necessarily tied to the detention officers' work of providing safety, security and searching for contraband. Thus, the security screening and the work of the detention officers shared the same purpose. In fact, the screening time was tied to the productive work of supervising and providing security by the detention officers.  They were hired to ensure safety and the security screening was necessary to keep the detention centers safe.

41.    Defendants could not have eliminated the screenings altogether without impairing the officers' ability to perform their work.  If Defendants eliminated the security screenings, officers could inadvertently or intentionally bring weapons or other contraband into the detention centers.  The introduction of weapons and other contraband into the detention centers would most certainly result in a less secure detention and would impair the officers' ability to provide security, supervise the detainees, and search for contraband.

42.     Additionally, preventing weapons and other contraband from entering the detention centers was an essential element of the officers' job duties.

43.     Nearly every court in the country has held that the time spent by correctional officers and detention officers undergoing security screenings is compensable time and must by paid by employers. *See, e.g., Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270 (10th Cir. 2020) (holding that time spent in security screenings by correctional officers is compensable under the FLSA); *Roberts v. State of Arizona*, No. Civ. A. 20-0060, 2021 WL 786615, at *7 (Ariz. Ct. App. Mar. 2, 2021) (same); *Alvarez v. U.S.*, No. Civ. A. 20-1533C, 2021 WL 6163405 (Fed. Cl. Dec. 30, 2021) (same); *Alexander v. U.S.*, No. Civ. A. 21-1143C , 2021 WL 5045270 (Fed. Cl. Oct. 30, 2021); *Adegbite v. U.S.* No. Civ. A. No. 20-1183, 2021 WL 5045268 (Fed. Cl. Oct. 29, 2021) (same).

44.     In particular, the Tenth Circuit in Aguilar stated as follows The *Aguilar* Court found the security screenings to be an intrinsic element of the correctional officers' principal activities in providing security at the prisons and was directly tied to the "productive work that the employee is employed to perform." *Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270, 1277-78 (10th Cir. 2020).  The Tenth Circuit stated as follows:

> MTC conducts the security screening to prevent weapons and other contraband from entering the prison. **And keeping weapons and other contraband out of the prison is necessarily "tied to" the officers' work of providing prison security and searching for contraband.** *Id.* Indeed, the security screening and the officers' work share the same purpose.
> …
> [T]he officers' principal duties include "searching for contraband and providing security." App. vol. 3, 446. **So even if this security screening relates in part to overall prison safety, what matters is that the screening is "tied to" the productive work that MTC employs the officers to perform, rendering it integral and indispensable to those duties.** *Busk*, 574 U.S. at 36, 135 S. Ct. 513.

*Id.* at 1278 (emphasis added).

9

45.    The Tenth Circuit further explained that if the security screenings were eliminated entirely, the correctional officers' work would be impaired. *Id*. at 1279.  This demonstrated that the security screenings were indispensable to the correctional officers' principal activity. *Id*.

46.    As noted above, Defendants did not pay for the time spent by Plaintiff and the Class Members going through the security screening.  The security screenings were not incidental activities for the Plaintiff and Class Members, but instead, this time was integral and indispensable to their principal activity and is compensable.

47.    Defendants violated the law by not paying for this time.

## PRE-SHIFT EQUIPMENT GATHERING

48.    After clearing the security screening and signing the logbook, the Plaintiff's and Class Members' workday continues.  They are then required to collect their duty belts and other required equipment to perform their work for Defendants, including radios, handcuffs, and keys. They gather this equipment from the equipment booth located at the central station in the detention centers.  This equipment is necessary for the Plaintiff and Class Members to perform their work in ensuring safety and security at the detention centers.  Gathering and donning this equipment must be performed after clearing the security screening because the Plaintiff and Class Members cannot bring this equipment into the facility, cannot clear the metal detector while wearing this equipment, and this equipment is in the possession of Defendants to ensure that all needed equipment for the safety and security of the detention centers is properly maintained.

49.    To gather this equipment, the Plaintiff and Class Members have to wait in line at the equipment booth at the central station.  The time it takes to wait in line, gather the equipment, and put on the equipment takes approximately 10-15 minutes.

50.     Additionally, the time it takes to gather and don this equipment is readily identifiable and calculable.  Defendants have surveillance records identifying this time.

51.     Gathering and donning the equipment is necessary to the principal work performed by the Plaintiff and Class Members – to provide security in the detention centers and to search for contraband.  Gathering and donning the equipment was undertaken at the workplace, was controlled and required by Defendants, and undertaken primarily for the benefit of Defendants.

52.     These activities were necessary to ensure the overall safety in the detention centers, which was the primary job function performed by the Plaintiff and Class Members. These activities were necessary to perform the productive work of supervising and providing security in the detention centers.

53.     Defendants could not have eliminated this activity without impairing the Plaintiff's and Class Members' ability to perform their work.  For example, if a detainee was behaving violently, a detention officer could not subdue that person without handcuffs.

54.     Defendants did not pay the Plaintiff and Class Members for this time spent working.

55.     However, this time should have been compensated by Defendant.

## **CONTINUOUS WORKDAY RULE**

56.     Pursuant to the continuous workday rule, once the first compensable activity is performed, the continuous workday has started and all subsequent activities performed are compensable regardless of the amount of time each specific individual activity takes. *See* 29 C.F.R. § 790.6(a).  The continuous workday rule requires compensation from the start of the first compensable activity to the last compensable activity. *See id*.  Specifically, section 790.6(a) states as follows:

> Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any

> workday must be included in the computation of hours worked to the same extent as would be required if the Portal Act had not been enacted.

*Id*.

57.     Thus, pursuant to the continuous workday rule, the Plaintiff and Class Members are entitled to compensation from the time they first performed their principal activities.  Defendants failed to do so.

58.     Plaintiff and the Class Members were non-exempt employees.

59.     Plaintiff and the Class Members were paid on an hourly rate basis.

60.     When they worked more than forty hours in a workweek, they were entitled to overtime pay.

61.     The pre-shift activities identified above were not incidental activities for the Plaintiff and Class Members, but instead, this time was integral and indispensable to their principal activity and is compensable.

62.     Although Defendants employed electronic "clocking in" technology, this technology was not made accessible to Plaintiff and the Class Members before the security screening.

63.     Due to the substantial pre-shift work, Plaintiff and the Class Members were not paid for all time worked each day and are owed significant unpaid wages.

64.     Defendants' method of paying Plaintiff and the Class Members in violation of the law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Defendants knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

## AUTOMATIC MEAL DEDUCTION

65.    During at least the past four years, Defendants have had a payroll policy of automatically deducting 30 minutes per shift worked for a so-called meal break for Plaintiff and the Class Members.

66.    Under Defendants' policy, the Plaintiff and Class Members are not to clock out at the beginning of their meal period or clock back in at the end of their meal period.  Instead, under Defendant's payroll policy, Defendants programmed its time tracking system to automatically deduct 30 minutes per shift worked.

67.    Defendants' policy is illegal.  If a meal period is used predominantly for the benefit of the employer, the entire meal period is compensable work time. *See Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 264 (5th Cir. 1998).  The Fifth Circuit in *Bernard* explained as follows:

> To be classified as a bona fide meal period, 29 C.F.R. § 785.19 provides that an employee "must be completely relieved from duty for the purpose of eating meals" during that period. When applying this test, courts have employed a "predominant benefit test". The critical question is whether the meal period is used predominantly or primarily for the benefit of the employer or for the benefit of the employee. The employer bears the burden to show that meal time qualifies for this exception from compensation.

*Id*. at 265.

68.    Defendants' payroll policy of automatically deducting 30 minutes per shift applied to Plaintiff and the Class Members.

69.    Defendants' automatic deduction policy is illegal because the meal period was primarily for the benefit of Defendants.

70.    The Plaintiff and Class Members were required to remain at the detention centers while monitoring the detainees in case of any emergencies – such as for fights, when detainees were injured, security breaches, and other emergencies.

71.     Additionally, the Plaintiff and Class Members were regularly interrupted during any meal periods to respond to issues with detainees.

72.     Further, Defendants had a policy of requiring the Plaintiff and Class Members to remain vigilant and alert at all times.  Thus, they were required to monitor detainees even during their meal breaks.  Thus, when a meal break was attempted to be taken, the Plaintiff and Class Members were not completely relieved of their duties for 30 minutes and were required to engage in work during their meal periods.

73.     Even if the meal period was not primarily for the benefit of Defendants, Defendants' policy is still illegal because it deducted 30 minutes when no meal breaks were taken. That is, when Plaintiff and the Class Member worked continuously without a break, they still had time deducted for a meal break.  This policy is per se illegal as the Plaintiff and Class Members were entitled to receive pay for all hours worked.

74.     Plaintiff and the Class Members are owed significant unpaid wages as a result of Defendants' illegal policy.  When Plaintiff worked more than 40 hours per week, he was not paid overtime wages at the rate of time and one half his regular rate of pay for all hours worked over 40 in a workweek as a result of Defendant's illegal pay policy of automatically deducting 30 minutes per shift.

75.     The Class Members also worked a similar schedule as Plaintiff.

76.     The Class Members were employed by Defendants and performed work similar to Plaintiff.

77.     Regardless of the detention center in which they worked, Plaintiff and the Class Members were required to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

78.    At the end of each pay period, regardless of the detention center in which they worked, Plaintiff and the Class Members received wages from Defendants that were determined by common systems and methods that Defendants selected and controlled.

79.    Defendants paid Plaintiff an hourly rate.

80.    Defendants paid the Class Members an hourly rate.

81.    When Plaintiff and Class Members worked fewer than forty hours in a workweek, Defendants did not pay them their agreed hourly rate.  Additionally, Defendants did not pay them for all hours worked and in fact, reduced their hours worked by automatically deducting time for the purported meal breaks. However, as noted above, throughout the relevant period, Defendants expected and required Plaintiff and the Class Members to be available to work during their unpaid meal breaks.  These unpaid meal break times constitute compensable time under the state law because (1) the meal period was primarily for the benefit of Defendants, (2) Defendants breached an agreement with Plaintiff and the Class Members by not paying them their agreed hourly rate for all hours they worked, (3) Defendants received and accepted the value of Plaintiff's and the Class Members' unpaid work with reasonable notice that Plaintiff and the Class Members expected to be paid for all hours worked, and/or (4) Defendants have been unjustly enriched by receiving the benefit of Plaintiff's and the Class Members' unpaid work.

82.    Defendants classify the Plaintiff and Class Members as non-exempt from overtime pay.

83.    Defendants knew and showed reckless disregard for whether Plaintiff and the Class Members were entitled to be paid for all hours worked.  In fact, Defendants were told that Plaintiff and the Class Members were working through lunch breaks and were regularly interrupted during

15

their lunch breaks.  Nevertheless, Defendants still refused to pay them for this time.  As a result,

Defendants' actions constitute a willful violation of the law.

### COUNT ONE: FAILURE TO PAY OVERTIME WAGES
#### (On Behalf of Plaintiff and the FLSA Class Members)

84. Plaintiff incorporates all allegations contained in the foregoing paragraphs.

85. Section 7(a) of the FLSA, 29 U.S.C. § 207(a)) provides that an employer shall pay

its employees at a rate no less than time-and-a-half for all hours worked more than forty (40) hours

per workweek.

86. The Plaintiff and Class Members are employees entitled to overtime wages.

87. None of the exemptions provided by the FLSA regulating the duty of employers to

pay overtime at a rate not less than one and one-half times the regular rate at which its employees

are paid are applicable to Defendants, Plaintiff, or the FLSA Class Members.

88. Pursuant to 29 U.S.C. § 216(b), the Plaintiff and the FLSA Class Members are

entitled to recover their unpaid overtime wages and liquidated damages in an amount equal to their

unpaid wages.

89. The Plaintiff and FLSA Class Members are also entitled to recover their attorneys'

fees and costs pursuant to 29 U.S.C. § 216(b).

### COLLECTIVE ACTION ALLEGATIONS

90. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

91. Plaintiff has actual knowledge that the FLSA Class Members have also been denied

overtime pay for hours worked over forty (40) hours in a workweek.

92. Plaintiff's knowledge is based on his personal work experience and through

communications with other workers.

93.     Other workers similarly situated to Plaintiff throughout the United States were also not paid full overtime wages due to Defendants' illegal policies.

94.     Although Defendants permitted and/or required the FLSA Class Members to work more than 40 hours per week, Defendants denied them full compensation for their overtime hours.

95.     The FLSA Class Members are not exempt from receiving overtime pay.

96.     The FLSA Class Members are similar to the Plaintiff in terms of relevant job duties, pay structure, work conditions, and the denial of overtime pay.

97.     Defendants' failure to pay overtime compensation at the rates required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of any potential Plaintiff.

98.     The experiences of the Plaintiff, with respect to his pay, hours, and duties are typical of the experiences of the FLSA Class Members.

99.     The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

100.     Although the exact amounts of damages may vary among the FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all FLSA Class Members.

101.     As such, the class of similarly situated Plaintiff for the FLSA Class is properly defined as follows:

> **All current and former detention officers who worked for Defendants at any time during the three year period prior to the filing of this Complaint to the present.**

## COUNT TWO: BREACH OF CONTRACT
**(On Behalf of Plaintiff and the Texas Class Members)**

102.    Plaintiff realleges and incorporates all allegations contained in the foregoing paragraphs.

103.    A valid and enforceable agreement existed between Plaintiff and Defendants, and the Texas Class Members and Defendants, the terms and conditions of which include, but are not limited to, an agreement by Plaintiff and the Texas Class Members to perform services for Defendants, and for Defendants to pay Plaintiff and the Texas Class Members at an agreed hourly rate for all time in which they performed compensable work.

104.    Plaintiff and the Texas Class Members duly performed under the agreement at Defendants' direction and for its benefit.

105.    Defendants failed and refused to perform its obligations under the agreement by not paying for all time worked by the Plaintiff and the Texas Class Members.

106.    Plaintiff and the Texas Class Members are entitled to recover damages from these breaches for the last four years.

107.    Plaintiff and the Texas Class Members are entitled to attorney's fees for such breach of contract.

## COUNT THREE: QUANTUM MERUIT
**(On Behalf of Plaintiff and the Texas Class Members)**

108.    Plaintiff realleges and incorporates all allegations contained in the foregoing paragraphs.  This claim is plead in the alternative to the breach of contract claim.

109.    Plaintiff and the Texas Class Members performed and provided valuable services to Defendants during their employment with Defendants.

110.     The pre-shift work (described in this Complaint) and the meal periods were primarily for the benefit of Defendants and constituted compensable time that Defendants failed to pay.

111.     Defendants accepted and retained the benefit of Plaintiff's and the Texas Class Members' services.

112.     No contract exists between Plaintiff and Defendants, and the Texas Class Members and Defendants.

113.     Defendants had reasonable notice and/or knowledge that Plaintiff and the Texas Class Members expected to be compensated for the services rendered for the Defendants.

114.     Defendants failed to pay Plaintiff and the Texas Class Members the reasonable value of the services they performed.

115.     Plaintiff and the Texas Class Members are entitled to recover damages under this claim for the last four years.

116.     Plaintiff and the Texas Class Members are entitled to attorney's fees and costs under this claim.

## COUNT FOUR: UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Texas Class Members)

117.     Plaintiff realleges and incorporates all allegations contained in the foregoing paragraphs.

118.     Defendants have been unjustly enriched at the expense of the Plaintiff and the Texas Class Members by failing to pay for work performed by Plaintiff and the Texas Class Members.

119.     Defendants knowingly and/or intentionally accepted the benefit of the work performed by Plaintiff and the Texas Class Members, despite their policy and practice of failing to pay Plaintiff and the Texas Class Members for such work.  In particular, Defendants received

19

the benefit of the labor and services provided to Defendants by the Plaintiff and the Texas Class Members.

120.    Such wrongful conduct demonstrates bad faith and undue advantage on the part of Defendants.

121.    It would be unjust and inequitable for Defendants to retain the benefit of the unpaid work performed by Plaintiff and the Texas Class Members.

**TEXAS CLASS ACTION ALLEGATIONS**

122.    Plaintiff incorporates all allegations contained in the foregoing paragraphs.

123.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff, individually and on behalf of all other similarly situated employees, pursue claims for breach of contract, quantum meruit, and unjust enrichment against Defendant.

124.    Plaintiff seeks class certification of the following class pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> **All current and former detention officers who worked for Defendants at any time in Texas during the four-year period prior to the filing of this Complaint to the present.**

125.    Plaintiff, individually and on behalf of other similarly situated employees, seeks relief on a class basis challenging Defendants' practice of failing to pay for all time worked.  As a result of Defendants' illegal pay policy, Plaintiff and the Texas Class Members were not paid their agreed rate of pay (or the reasonable value of the services they rendered) for all hours that they worked for Defendants in non-overtime workweeks (weeks where the total number of hours worked was 40 hours or less).

126.    Throughout the relevant period, Defendants promised to provide Plaintiff and the Texas Class Members for all hours that they worked at an agreed upon rate. However, Defendants

routinely and knowingly failed to pay and actively reduced the amount of time that the Plaintiff and Class Members worked.  By doing so, Defendants reduced the amount of time for which they were entitled to receive pay.

127.    Throughout the relevant period, Defendants knew that Plaintiff and Class Members regularly performed work without pay because Defendants' agents regularly encouraged, instructed, suffered and permitted Plaintiff and Class Members to perform this work and observed this work being performed on a regular basis.

128.    Throughout the relevant period, Defendants knew that Plaintiff and the Texas Class Members, regardless of their job title or location, regularly performed work for which  they were not being paid because they routinely engaged in work prior to clocking-in for the day or during their meal periods at the detention centers, in plain sight, and at their managers' request.

129.    As a result, throughout the relevant period, Defendants knew that Plaintiff and the Texas Class Members were not being properly compensated for all of their work.

130.    As a result, during the relevant period, Defendants failed to pay Plaintiff and the Texas Class Members for their valuable services, specifically authorized work to be done, and received the benefit of such work.

131.    Defendants maintained common work, time, pay, pre-shift policies, and meal break policies and procedures at its Texas facilities during the relevant period.  As a result, Plaintiff and the Texas Class Members are similarly situated regardless of their job title or location, and have been regularly deprived of pay owed to them in workweeks where Plaintiff and the Class Members worked forty hours or less.

132.    As a result of this improper conduct, Defendants have retained money that should have paid to Plaintiff and the Texas Class Members. By retaining this money, Defendants have

received an inequitable windfall through, *inter alia*, reduced labor and operations costs and enhanced profit margins.

133.    Plaintiff's state-law claims against Defendants for breach of contract, quantum meruit, and unjust enrichment against Defendants all satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action.

134.    **Numerosity**. The class satisfies the numerosity standard as it is believed to number over 250 class members.  Consequently, joinder of all class members in a single action is impracticable.  The data required to calculate the size of the class is within the sole control of Defendants.

135.    **Commonality**. There are common questions of law and fact common to the class that predominate over any questions affecting individual members.  The questions of law and fact common to the class arising from Defendants' actions include, without limitation, the following:

   a.  Whether Defendants had a policy and practice of automatically deducting pay for meal breaks;

   b.  Whether the meal periods were primarily for the benefit of Defendants or Plaintiff/Texas Class Members;

   c.  Whether Defendants directed, required, requested, and/or permitted Plaintiff and the Texas Class Members to work during unpaid meal breaks;

   d.  Whether the security screenings are compensable time worked;

   e.  Whether the time spent gathering equipment at the center station is compensable time worked;

   f.  Whether Defendants knew or should have known that Plaintiff and Class Members were not compensated for work performed during their shifts;

g.   Whether agreements existed between Plaintiff and Class Members concerning payment for all work performed and whether Defendants breached such agreements;

h.   Whether Defendants derived a benefit from the Plaintiff and the Texas Class Members being required to respond at all times while at the detention centers;

i.   Whether valuable services were rendered to Defendants by the Plaintiff and Texas Class Members during their shifts, and whether Defendant accepted the benefit of Plaintiff's and the Texas Class Members' unpaid services;

j.   Whether Defendants were unjustly enriched by Plaintiff's and the Texas Class Members' unpaid work;

k.   The proper measure of damages, including whether the reasonable value of such services can be based on the agreed hourly rate of pay.

136.   **Typicality**. Plaintiff's claims are typical of those of the class because Plaintiff's claims arise from the same course of conduct and legal theories as the claims of the prospective class members.  Like the Texas Class Members, the Plaintiff worked at an ICE detention center operated by Defendants during the relevant time period. Like the Texas Class Members, the Plaintiff was subject to the identical policies that deprived of compensation for all hours worked. The other facts outlined above likewise apply equally to both the Plaintiff and the Texas Class Members.

137.   **Adequacy**. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class members he seeks to represent.  The interests of the members of the class will be fairly and adequately protected by the Plaintiff and the undersigned counsel, who has experience in employment class action lawsuits.

138.   **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even if the event any member of the class could afford to pursue individual litigation against a company the size of Defendants, doing so would unduly burden the court system.  Individual litigation of 250 claims would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the class would create risk of inconsistent and varying judicial results and establish incompatible standards of conduct for Defendants. A single class action can determine the rights of all class members in conformity with the interest of efficiency and judicial economy.

## DAMAGES SOUGHT

139.   Plaintiff and the FLSA Class Members are entitled to recover their unpaid overtime wage compensation.

140.   Plaintiff and the FLSA Class Members are entitled to gap time pay.

141.   Plaintiff and the FLSA Class Members are also entitled to an amount equal to all of their unpaid wages due under the FLSA as liquidated damages.  29 U.S.C. § 216(b).

142.   Plaintiff and the FLSA Class Members are entitled to recover attorney's fees and costs as required by the FLSA.  29 U.S.C. § 216(b).

143.   Plaintiff and the Texas Class Members are entitled to recover damages flowing from the breach of contract, the reasonable value of the services they provided, and the value by which Defendants were unjustly enriched by receiving the unpaid labor provided by the Plaintiff and the Texas Class Members.  Additionally, Plaintiff and the Texas Class Members are entitled to recover their attorneys' fees and costs, pre-judgment and post-judgment interest as provided by law, and such other relief the Court deems fair and equitable.

**JURY DEMAND**

144.    Plaintiff hereby requests trial by jury.

**PRAYER**

145.    For these reasons, Plaintiff and the Class Members respectfully request that

judgment be entered in their favor awarding the following relief:

a.  An order designating this action as a collective action on behalf of the Collective Class and issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals;

b.  An order certifying this case as a Class Action under Rule 23 of the Federal Rules of Civil Procedure.

c.  An order finding that Defendants violated the FLSA;

d.  An order finding that these violations were willful;

e.  All unpaid wages;

f.  An equal amount as liquidated damages as allowed under the FLSA;

g.  Reasonable attorney's fees, costs, and expenses of this action as provided by the FLSA; and

h.  Such other and further relief to which Plaintiff and Class Members may be entitled at law or in equity.

Respectfully submitted,

HODGES & FOTY, LLP

By:  _/s/ Don J. Foty_____
        Don J. Foty
        dfoty@hftrialfirm.com
        Texas State Bar No. 24050022
        4409 Montrose Blvd, Ste. 200
        Houston, TX 77006
        Telephone: (713) 523-0001
        Facsimile: (713) 523-1116

        COUNSEL FOR PLAINTIFF AND CLASS MEMBERS